[Doc. No. 39]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE
HONORABLE JEROME B. SIMANDLE

| | |
|---|---|
| KRISTY PADILLA, a Minor by her Guardian ad Litem, Edwin Padilla, et al., <br><br>           Plaintiffs, <br><br>     v. <br><br> PRICE TOYOTA, et al., <br><br>           Defendants. | Civil No. 04-3422-JBS-AMD <br><br><br><br><br><br><br> **OPINION** |

**APPEARANCES:**

Thomas R. Smith, Esq.
Pellettieri, Rabstein and Altman
100 Nassau Park Boulevard
CN 5301
Princeton, NJ 08543-5301
     *Counsel for Plaintiffs*

Jennifer M. Brook, Esq.
Eckert Seamans Cherin & Mellott, LLC
1515 Market Street
Ninth Floor
Philadelphia, PA 19102
     *Counsel for Defendants Toyota Motor Corporation*
      *and Toyota Motor Sales, U.S.A., Inc.*

William H. Hanifen, IV, Esq.
440 Collings Avenue
P.O. Box 10
Collingswood, NJ 08108-0010
     *Counsel for Defendant William R. Baker*

**DONIO, MAGISTRATE JUDGE:**

     This matter comes before the Court upon the motion of Plaintiffs to compel Defendants to produce information from the

electronic data storage unit, or "black box," of the vehicle involved in the accident that is the subject of this litigation. The Court has considered the moving papers and the opposition thereto, and for the reasons set forth below and for good cause shown, the Court will grant Plaintiffs' motion.

Plaintiffs' filed the complaint in this matter on May 11, 2004 in the Superior Court of New Jersey, Law Division - Cumberland County for personal injuries sustained by Plaintiff Kristy Padilla in connection with an automobile accident that occurred on May 18, 2002. See Complaint at ¶ 20. Padilla was a passenger in a 2002 Toyota Corolla (hereinafter "Vehicle") driven by her father when the driver of a pick-up truck allegedly swerved over a double yellow line and struck the front right of the Vehicle. See Toyota Defendants' Brief in Opposition to Plaintiffs' Motion to Compel (hereinafter "Defendants' Opposition") at 1. Plaintiffs allege, inter alia, that a defect in the design or manufacture of the passenger side airbag system of the Vehicle caused or enhanced Kristy Padilla's injuries. See Complaint at ¶ 21. The case was removed to this Court by Defendants on July 20, 2004.

Plaintiffs filed this motion to compel discovery of information from the Vehicle's black box following the parties' attempt to resolve this issue pursuant to L. Civ. R. 37.1. In support of this motion, Plaintiffs assert that there is relevant information, which pertains to the time leading up to the deployment of the passenger side airbag, stored within the Random Access Memory (hereinafter "RAM") or Electronic Erasable and

2

Programmable Read-Only Memory (hereinafter "EEPROM") of the Vehicle's black box. See Plaintiffs' Motion to Compel (hereinafter "Plaintiffs' Motion") at 4. This information, Plaintiffs allege, is not available to the public and can only be accessed by Defendants. See id. at 3. Further, Plaintiffs assert that their expert, Scott King, M.E., needs this information to aid his analysis of the airbag system. See id.

Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. oppose Plaintiffs' Motion to Compel by asserting that any data contained in the black box would not be relevant to Plaintiffs' claims or reliable. See generally Defendants' Opposition. Defendants also argue that there is no reliable tool for retrieving data from black boxes, so it would allegedly be impossible to validate any data that might be retrieved. See id. at 6. Further, Defendants allege that retrieving the data from the black box would "cost Toyota at least $5,000," and require a Toyota engineer to travel from California to New Jersey to perform the retrieval. See id. at 6-7.

According to Defendants' expert, Motoki Shibata, the Supplemental Restraint Systems (hereinafter "SRS") air bag system, which was installed in the 2002 Toyota Corolla, consists of "the following primary components: a) steering wheel pad assembly; b) spiral cable; c) front passenger air bag assembly; d) SRS warning light on instrument panel; e) center air bag sensor assembly; and f) two front air bag sensors." Affidavit of Motoki Shibata at ¶ 7. Defendants' expert further states that "[t]he center air bag sensor

3

assembly contains a G-Sensor; safing sensor; computer with calculation, diagnostic and memory capabilities; and a backup capacitor." Id. at ¶ 8. Shibata acknowledges that there are seven items memorized in the center airbag system's RAM or EEPROM,[1] see id. at ¶ 13, and that from at least some of this memorized information a "very rough approximation of the crash pulse may be obtained," Supplemental Affidavit of Motoki Shibata at ¶ 10.

In support of their opposition, Defendants assert that the center airbag system's RAM and EEPROM have limitations, which allegedly make any information retrieved from them unreliable. Specifically, Defendants' expert states that "it is impossible to tell from the data when, or in what sequence, particular events were recorded," as none of the data is time-stamped. Supplemental Affidavit of Motoki Shibata at ¶ 8. Additionally, Shibata states that the device was designed with only one memory register, meaning that recorded data may be overwritten when there is more than one triggering event. See id. at ¶ 9. Accordingly, Shibata asserts that there is no way to verify that event data obtained from the black box corresponds to Plaintiffs' accident. See id. Shibata asserts that "[t]he EEPROM storing the G-Wave data is not a crash recorder," or "intended for accident reconstruction," and "is used

---

1. According to the Defendants' expert, the following items are memorized in the center airbag system's RAM or EEPROM: (1) Diagnostic codes: a) Display Codes, b) SAE (Service) Codes, c) SAE (Development) Codes; (2) G-Wave Data; (3) ON/OFF output time data; (4) Seatbelt buckle switch status; (5) Maximum velocity change; (6) Failure time memory (elapsed time of warning lamp illumination); and (7) Check completion flag. See Affidavit of Motoki Shibata at ¶ 13.

by the manufacturer for quality control purposes only." Affidavit of Motoki Shitbata at ¶ 31. Likewise, Shibata asserts that "[t]he EEPROM storing ON/OFF output time data is not a crash recorder," or "intended of for accident reconstruction," and "is used by the manufacturer for quality control purposes only." Id. at ¶ 37. Shibata also asserts that "Toyota does not have confidence that the read-out report generated by the prototype tool [used to retrieve the data] accurately reflects the information stored in the SRS air bag system's memory." Id. at ¶ 48.

Plaintiffs' expert asserts that "[a]ccident reconstruction was not the basis of our request for this data." Letter Report from R. Scott King to Thomas R. Smith, Esquire, dated June 27, 2005, attached as Exhibit M to Counsel for Plaintiffs' Certification. Rather, King asserts "we requested the data to aid in our analysis of whether the airbag system in the Padilla vehicle operated as it should have." Id. King further asserts that the information he needs is that which Shibata acknowledged was recorded for "quality control purposes." See id. Additionally, King asserts that "Mr. Shibata's indicat[ion] that Toyota does not rely upon the data obtained from within the airbag sensor because it is not confident that the tool utilized to extract it provides accurate results . . . defies logic." Id.

In response to Plaintiffs' expert, Shibata asserts in a supplemental affidavit that the quality control studies performed on the component are done "under controlled conditions at the manufacturing plant." Supplemental Affidavit of Motoki Shibata at

5

¶ 12. He asserts that "[s]uch controlled conditions are vastly different from those conditions that exist during a collision," and that "[w]hile the conditions in the manufacturing plant may be controlled, the conditions in the field cannot, which is why Toyota uses the event data to insure that airbag center sensor assembly is operational before it is installed in a particular vehicle, but does not rely on such crash data to reconstruct accidents in the field." Id.

Rule 26 of the Federal Rules of Civil Procedure sets forth the framework for the scope of discovery.  As a general matter, parties may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  FED. R. CIV. P. 26(b)(1).  The Court may also permit "for good cause" discovery of matters that are "relevant to the subject matter involved in the action."  Id.  "The party resisting discovery has the burden of clarifying, explaining and supporting its objections."  Nestle Foods Corp. v. Aetna Cas. & Sur. Co., 135 F.R.D. 101, 104 (D.N.J. 1990) (citing Tele-Radio Systems Ltd. v. De Forest Electronics, 92 F.R.D. 371, 375 (D.N.J. 1981)).  However, the burden remains on the party seeking discovery to "show[] that the information sought is relevant to the subject matter of the action and may lead to admissible evidence."  Caver v. City of Trenton, 192 F.R.D. 154, 159 (D.N.J. 2000) (citing Nestle, 135 F.R.D. at 105).

As a preliminary matter, "it is important to distinguish the right to obtain information by discovery from the right to use it at trial."  Nestle, 135 F.R.D. at 104 (finding that "Defendants'

position that such extrinsic evidence would be inadmissible at trial is not the standard by which relevancy for discovery purposes is measured"); Leksi v. Fed. Ins. Co., 129 F.R.D. 99, 104 (D.N.J. 1989). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1) (emphasis added). Thus, relevancy is more liberally and broadly construed at the discovery stage than at trial. See Nestle, 135 F.R.D. at 104; Leksi, 129 F.R.D. at 104.

Here, Defendants' have raised an objection to Plaintiffs' Motion to Compel based on relevancy grounds. In support of their position, Defendants' argue that "it is impossible to tell from the data when, or in what sequence, particular events were recorded, as none of the data is time-stamped." Defendants' Opposition at 4. Additionally, Defendants' assert, there is no way to verify that event data obtained from the black box corresponds to Plaintiffs' accident. See id. at 5. The question thus becomes whether the information sought by Plaintiffs is relevant under Rule 26 standards and thus discoverable.

A central issue of this case concerns whether the passenger side airbag of Plaintiffs' vehicle was defective. See Plaintiffs' Motion at 3; Defendants' Opposition at 1. Accordingly, information concerning the operation of the airbag in question during and immediately preceding the accident is highly relevant to both Plaintiffs' claims and Defendants' defenses. Defendants themselves concede that the center airbag sensor assembly has "limited memory

7

capabilities," and "records certain crash data in a deployment-level event."  See Defendants' Opposition at 2.  Further, Defendants admit that from this information "a very rough approximation of the crash pulse may be obtained."  Id. at 5. Moreover, Plaintiffs assert that their experts have concluded that information about "crash pulse, vehicle speed, brake application, throttle position and seat belt status" may be recorded in the black box, and if so would "provide important information to any party seeking to better understand the crash events."  Reply Brief in Response to Opposition to Plaintiff's Motion to Compel (hereinafter "Pl. Reply") at 3.  Consequently, the Court finds that the information from the black box is relevant to the subject matter of this action.

The gravamen of Defendants' objection is that the information in the black box is either not reliable, or cannot be retrieved by reliable means, and therefore not able to lead to admissible evidence.  In essence, Defendants' objections are akin to the issues raised in a motion to challenge the reliability of expert testimony pursuant to FED. R. EVID. 702.  See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  Plaintiffs' expert has asserted that information in the black box may lead to information concerning the crash event.  Further, Defendants' expert has acknowledged that a rough approximation of the crash pulse may be obtained, which has the potential to shed light on the circumstances under which the airbag deployed during the accident. The Court shall not in the discovery context preclude Plaintiffs

8

from obtaining information based on the reliability arguments raised by Defendants here. Unreliability may very well support a <u>Daubert</u> motion in the future, although the Court in this Order makes no finding in that regard. However, in light of the fact that the black box at issue is from the vehicle involved in this accident, and the liberality with which relevancy is construed at the discovery stage, the Court rejects Defendants' argument that Plaintiffs' requests are not reasonably calculated to lead to the discovery of admissible evidence and finds that Plaintiffs have met their burden for production of the discovery.

With respect to the burdensome argument, Defendants' assert that retrieving the data from the black box would "cost Toyota at least $5,000," and require a Toyota engineer to travel from California to New Jersey to perform the retrieval.[2] In determining whether the production of discovery is appropriate under Rule 26, "[t]he relevancy of this information must be balanced against the burdensomeness of its production." <u>Leski</u>, 129 F.R.D. at 105. The Court finds that any expense or burden in retrieving the data from the black box is outweighed by the potential benefit of the proposed discovery. <u>See, e.g.</u>, <u>Fagan v. District of Columbia</u>, 136 F.R.D. 5, 7 (D.D.C. 1991) ("The mere fact that discovery requires work and may be time consuming is not sufficient to establish undue

---

2. In response, Plaintiffs' assert that the expense and inconvenience of producing discovery is "wholly irrelevant," because "Toyota sold this car, it ended up in New Jersey, and was involved in a serious accident in which the airbag system contributed to the injuries suffered by the plaintiff." Pl. Reply at 3.

burden."). Consequently, Defendants' argument in this regard is rejected.

An appropriate order will be entered.

s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

Dated: October 28, 2005

cc: Hon. Jerome B. Simandle